UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| ANDRE ANTROBUS,<br><br>Plaintiff,<br><br>-v-<br><br>NEW YORK CITY et al.,<br><br>Defendants. | : | 23-CV-7038 (JMF)<br><br><u>MEMORANDUM OPINION AND ORDER</u> |

JESSE M. FURMAN, United States District Judge:

Plaintiff Andre Antrobus, who proceeds here without counsel, was, at the time this lawsuit was filed, an inmate at George R. Vierno Center ("GRVC") on Rikers Island. Liberally construed, his operative complaint (the "Complaint") alleges claims under the Free Exercise Clause of the First Amendment and the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. §§ 2000cc, et seq., against New York City and Charisma Carter, identified as "Assistant Commissioner" of the New York City Department of Correction (the "DOC"). *See* ECF No. 31 ("SAC"); *see also* ECF No. 16. Defendants now move, pursuant to Rule 12(b) of the Federal Rules of Civil Procedure, to dismiss Antrobus's claims. *See* ECF No. 37. For the reasons that follow, Defendants' motion is GRANTED with respect to Antrobus's claims against Carter and DENIED with respect to his claims against the City.

## BACKGROUND

The following facts, drawn from the Complaint and materials attached thereto, are assumed to be true for the purposes of this motion. *See, e.g., Empire Merchs., LLC v. Reliable Churchill LLLP*, 902 F.3d 132, 139 (2d Cir. 2018).

Antrobus's Complaint is not entirely coherent, but his principal contention appears to be that the DOC's grooming policies discriminate against him as a Muslim. In particular, he alleges that DOC has an "unwritten policy" of denying razors to inmates in mental health units, *see* SAC 9, and that, pursuant to this policy, he has been denied the use of a razor in three different DOC facilities over the course of three years, *see id.* at 7 ("Rikers Islands facilities AMKC 2022 to OBCC 2024 to GRVC 2025 has not allow[ed] [r]azor usage to mental observation housing."); *see also id.* at 11 (alleging also that he was permitted to visit a barber shop only "every three months" between 2022 and October 2024).[1] Antrobus appears to allege that this policy discriminates against his religious practice because "shaving ones underarms and pubic area to communicate and pray with god is essential to . . . Islam." *Id.* at 7.

Antrobus attaches to the Complaint affidavits purporting to be from fellow inmates attesting to the denial of razor use and inadequate barbershop access for those in mental observation units. *See id.* at 27, 31. In addition, he notes that he has "over 30 witnesses" who corroborate his claims. *Id.* at 11. Antrobus alleges that he raised his concerns — to wit, that the DOC was "not issuing razors to [mental observation] units" and preventing prisoners from "[meeting their] religious practices and grooming" standards — with former Speaker of the City Council, Adrienne Adams, and Carter. *See id.* But neither addressed his concerns. Carter merely told Antrobus that he "should've never got arrested." *Id.*

On August 9, 2023, Antrobus filed this lawsuit against the City, the DOC, and several John Does. *See* ECF No. 1. In an Order entered on April 15, 2025, the Court dismissed all claims against the DOC as a non-suable entity and dismissed all claims other than those relating

[1] References to page numbers in ECF No. 31 are to the page numbers automatically generated by the Court's Electronic Case Filing ("ECF") system.

to grooming, which the Court construed to arise under the First Amendment and RLUIPA. *See* ECF No. 16 at 3. Thereafter, Antrobus filed the Complaint naming Carter. SAC 1.

## LEGAL STANDARDS

When reviewing a motion to dismiss under Rule 12(b)(6), a court must accept the well-pleaded factual allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff. *See, e.g.*, *Holmes v. Grubman*, 568 F.3d 329, 335 (2d Cir. 2009). To avoid dismissal, a plaintiff must state "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). This means that a complaint is properly dismissed where "the allegations in a complaint, however true, could not raise a claim of entitlement to relief." *Twombly*, 550 U.S. at 558. Where, as here, a plaintiff proceeds *pro se*, the Court must afford special solicitude to the litigant's filings, including "liberal construction of pleadings, motion papers, and appellate briefs," as well as "relaxation of the limitations on the amendment of pleadings." *Tracy v. Freshwater*, 623 F.3d 90, 101 (2d Cir. 2010). "Nevertheless, to survive a motion to dismiss, a *pro se* plaintiff must still plead sufficient facts to state a claim that is plausible on its face." *Slade v. City of New York*, No. 24-CV-514 (JMF), 2025 WL 1707563, at *1 (S.D.N.Y. June 18, 2025) (internal quotation marks omitted).

## DISCUSSION

As noted, Antrobus brings Free Exercise and RLUIPA claims against the City and Carter. The Free Exercise Clause, applicable to the States under the Fourteenth Amendment and enforceable against the City pursuant to 42 U.S.C. § 1983, "provides that 'Congress shall make

no law . . . prohibiting the free exercise' of religion." *Fulton v. City of Philadelphia*, 593 U.S. 522, 532 (2021) (quoting U.S. Const. amend. I). To assess a Free Exercise claim in the prison context, "a court must determine (1) whether the practice asserted is religious in the person's scheme of beliefs, and whether the belief is sincerely held; (2) whether the challenged practice of the prison officials infringes upon the religious belief; and (3) whether the challenged practice of the prison officials furthers legitimate penological objectives." *Kravitz v. Purcell*, 87 F.4th 111, 128 (2d Cir. 2023). RLUIPA, meanwhile, generally provides inmates with "greater protection" to exercise their religious beliefs than the First Amendment. *Holt v. Hobbs*, 574 U.S. 352, 361-62 (2015). It prohibits the government from "substantial[ly] burden[ing]" religious exercise unless the burden furthers a compelling governmental interest by the least restrictive means. *See Jova v. Smith*, 582 F.3d 410, 415 (2d Cir. 2009); *see also Kravitz*, 87 F.4th at 126 n.12. A "substantial burden" is one that places "substantial pressure on an adherent to modify his behavior and to violate his beliefs." *Singh v. Goord*, 520 F. Supp. 2d 487, 498 (S.D.N.Y. 2007).

To state a claim against the City, however, it is not enough for Antrobus to establish a violation of the First Amendment or RLUIPA. That is because a local government may not be sued for either violation unless it was caused by a municipal policy, practice, or custom. *See Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 694 (1978); *see also, e.g.*, *Lynch v. Ulster Cnty.*, No. 9:25-CV-0959 (GTS/MJK), 2026 WL 1256952, at *1 (N.D.N.Y. May 7, 2026) ("*Monell*'s requirement of a municipal policy, practice or custom applies not only to claims brought under 42 U.S.C. § 1983 but to claims brought under . . . RLUIPA." (citing cases)). "A plaintiff may establish the existence of an official policy or custom by showing the constitutional violation was caused by: (1) a formal policy officially endorsed by the municipality; (2) actions taken by government officials responsible for establishing the

municipal policies that caused the particular deprivation in question; (3) a practice so consistent and widespread that, although not expressly authorized, constitutes a custom or usage of which a supervising policy-maker must have been aware; or (4) a failure by policymakers to provide adequate training or supervision to subordinates to such an extent that it amounts to deliberate indifference to the rights of those who come into contact with municipal employees." *Grytsyk v. Morales*, 527 F. Supp. 3d 639, 657-58 (S.D.N.Y. 2021) (cleaned up).

Applying these standards here, the Court cannot dismiss Antrobus's claims against the City. For starters, Defendants do not even reference RLUIPA, let alone make any argument for dismissal of Antrobus's claims under RLUIPA — despite the Court's prior Order stating explicitly that the Court construed Antrobus's Complaint as stating a claim under the statute. *See generally* ECF No. 16. They have therefore forfeited any argument as to Antrobus's RLUIPA claim. *See, e.g.*, *Harris v. N.Y.C. Hum. Res. Admin.*, No. 20-CV-2011 (JPC), 2022 WL 3100663, at *14 (S.D.N.Y. Aug. 4, 2022) ("Generally, a party forfeits arguments not sufficiently argued in the briefs."). As to Antrobus's Free Exercise claim, the City makes only one argument: that Antrobus fails to plausibly allege municipal liability under *Monell*. *See* ECF No. 38 ("Defs.' Mem."), at 6-9. Drawing all inferences in Antrobus's favor, however, the Court disagrees. Antrobus's allegations of a multi-year, multi-facility denial of razors to inmates in mental health units, combined with the affidavits supporting his allegations, suggests the kind of "persistent or widespread" practice that can constitute a municipal custom for the purposes of *Monell*. *Patterson v. County of Oneida*, 375 F.3d 206, 226 (2d Cir. 2004) (internal quotation marks omitted). That Antrobus purportedly put a City Council member and DOC officials on notice of the alleged violation also implies policymaker awareness of his rights violation, further supporting his claim of municipal liability. *See, e.g.*, *Jones v. Town of E. Haven*, 691 F.3d 72, 81

(2d Cir. 2012) ("A municipal custom, policy, or usage [can] be inferred from evidence of deliberate indifference of supervisory officials to such abuses."); *Connick v. Thompson,* 563 U.S. 51, 61-62 (2011) (noting that a municipality's "'policy of inaction' in light of notice that its program will cause constitutional violations 'is the functional equivalent of a decision by the city itself to violate the Constitution'" (internal quotation marks omitted)). In short, Defendants' motion must be and is denied with respect to Antrobus's claims against the City.[2]

By contrast, Antrobus fails to state any claim against Carter. "It is well settled in this Circuit that personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." *Spavone v. New York State Dep't of Corr. Servs.*, 719 F.3d 127, 135 (2d Cir. 2013). Thus, "[t]o hold a state official liable under § 1983, a plaintiff must plead and prove the elements of the underlying constitutional violation directly against the official." *Tangreti v. Bachmann*, 983 F.3d 609, 620 (2d Cir. 2020). Here, Antrobus alleges no personal connection between Carter and his alleged rights violations. At most, the Complaint can be read to suggest that Carter knew of, or failed to remedy, the constitutional violation allegedly arising out of the challenged grooming policy. *See* SAC 9. But that is insufficient to hold Carter liable for any First Amendment violation. *See Tangreti*, 983 F.3d at 618-19. Nor is it enough to establish Carter's liability for any RLUIPA violation, which, in any

[2] On top of the allegations regarding the DOC's alleged grooming policy, Antrobus's Complaint includes some stray allegations to the effect that he had "[r]eligious [a]rticles taken and withheld." SAC at 9; *see also id.* at 13 (alleging that, in December 2022, mail officer C.O. Overton withheld "religious articles (beads, prayer books, Alkebulan tassels and images with prayer)!" and that C.O. Grant helped the "alternate mail room lady in 2023 throw [his] [r]eligious [a]rticles in the garbage"). The Court does not read the Complaint to be bringing a standalone claim based on these allegations. To the extent that it does so, however, the claim would fail as a matter of law because Antrobus's bare allegations fail to show "more than a sheer possibility that [anyone] acted unlawfully," *Iqbal*, 556 U.S. at 678, let alone that the City would be responsible for any violation under *Monell*.

event, is likely foreclosed by the Supreme Court's recent decision in *Landor v. Louisiana Department of Corrections & Public Safety*, 146 S. Ct. 1931 (2026), which held that RLUIPA does not permit suits against state officials in their individual capacities. Accordingly, Antrobus's claims against Carter must be and are dismissed.

**CONCLUSION**

For the foregoing reasons, Defendants' motion to dismiss is GRANTED with respect to Antrobus's claims against Carter but DENIED with respect to Antrobus's claims against the City. With respect to the dismissed claims against Carter, the Court declines to grant leave to amend. Although leave to amend a pleading should be freely given "when justice so requires," FED. R. CIV. P. 15(a)(2), and courts should generally grant plaintiffs proceeding without counsel leave to amend "at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated," *Gomez v. USAA Fed. Sav. Bank*, 171 F.3d 794, 795 (2d Cir. 1999) (per curiam), "it is within the sound discretion of the district court to grant or deny leave to amend," *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 200 (2d Cir. 2007). Here, the defects in Antrobus's claims against Carter are substantive, so amendment would plainly be futile. *See, e.g.*, *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000). Moreover, the Court granted Antrobus leave to amend in response to Defendants' motion to dismiss and explicitly warned that he would "not be given any further opportunity to amend the complaint to address issues raised by the motion to dismiss." ECF No. 30; *see, e.g.*, *Transeo S.A.R.L. v. Bessemer Venture Partners VI L.P.*, 936 F. Supp. 2d 376, 415 (S.D.N.Y. 2013).

Unless and until the Court orders otherwise, the City shall answer Antrobus's remaining claims **within three weeks of the date of this Memorandum Opinion and Order**. By separate Order, the Court will schedule an initial pretrial conference as to the remaining claims.

The Clerk of Court is directed to terminate Carter as a Defendant.

SO ORDERED.

Dated: August 4, 2026
New York, New York

JESSE M. FURMAN
United States District Judge